OPINION OF THE COURT
Kaye, J.
The youthful offender law (CPL art 720) does not vest courts with discretion to conduct private sentencing proceedings in felony cases. Those proceedings, as all court sittings, are presumptively open to the public and the press. We therefore affirm the Appellate Division judgment which — in a *266 manslaughter case and an arson case — declared illegal both courtroom closures that were based solely upon the fact that the defendants were youthful offenders.
The first of the two cases before us involves Dawn Maria C. who, after widely publicized pretrial and trial proceedings, was convicted in County Court of manslaughter in the first degree, a class B felony, for shooting her father. At the time of the incident, she was 17 years old. The Trial Judge, respondent G. Thomas Moynihan, denied her motion for youthful offender treatment and sentenced her to an indeterminate term of imprisonment of 2 Vs to 7 years. On appeal, the Appellate Division vacated the conviction and, as an exercise of its discretion, found her to be a youthful offender. The case was remitted to County Court for resentencing (People v Cruickshank, 105 AD2d 325, affd sub nom. People v Dawn Maria C., 67 NY2d 625). Upon remittal, respondent sua sponte closed all further proceedings, resentenced Dawn Maria C., and directed the clerk to seal the records. At no time was there a motion for closure.
The second case involves a break-in and fire at the adminis.trative offices of Colonie Central High School. Four students— 14 to 18 years old — were arrested and charged with arson in the second degree, a class B felony. All four pleaded guilty before respondent, Judge John G. Turner, Jr., and then moved for youthful offender status, closure of the courtroom and sealing of all official records. In her motion, defendant Arianne D. — who was 14 years old at the time of the incident— stated as the basis for closure only that "the interest of justice and related Court proceedings involving co-defendants in this case dictate that all proceedings after a Youthful Offender adjudication be had and conducted in private, that is, not open to the public.” Respondent Turner granted the motions, finding the four defendants youthful offenders and declaring that all further proceedings would be conducted in private. He wrote: "The provisions of CPL 720.15(3) do not apply once a final adjudication of youthful offender status has been made. [Citations omitted.] At that point the secrecy provisions of CPL 720.35 become operational.” Respondent then continued the proceedings privately in chambers, excluding the public and the press. The dispositions in three of the four cases have since been discovered and publicized. Only the sentence of Arianne D. remains undisclosed.
Petitioner newspapers, upon being refused information as to *267 the sentences, commenced two article 78 proceedings in the Appellate Division, naming the Judges and the youths as respondents, and seeking both a declaration that each respondent’s actions in closing the proceedings were illegal and a direction that portions of the sentencing transcript, or the sentence itself, be revealed. Only the Judges appeared. The Appellate Division (two Justices dissenting) concluded that respondents had erred in closing the courtrooms without following the procedures outlined in Matter of Westchester Rockland Newspapers v Leggett (48 NY2d 430) to determine whether closure was appropriate. The court instructed them to reveal the sentences that had been imposed but denied petitioner’s request for release of portions of the transcripts. On this appeal taken as of right by respondent Judges, we now affirm.
In this State, judicial proceedings are presumptively open. "The sittings of every court within this state shall be public, and every citizen may freely attend the same.” (Judiciary Law § 4.) Respondents urge that youthful offender sentencings are by nature different from other court sittings, that the youthful offender statute provides an exception to the statutory presumption of openness, and that these proceedings may therefore be closed in the discretion of the trial court, which discretion was not abused.
Any discussion of youthful offender procedures — which are wholly statutory — necessarily centers on the statutes.
The difficult question of how young adults accused of crime should be treated within the justice system — whether as juveniles or adults — has long been a subject of legislative concern, reflecting that such youths may, concomitantly, be children in need of treatment and adults guilty of serious crime. Special measures for dealing with these youths were first adopted in 1943 (L 1943, ch 549; see also, Code Grim Pro, tit VII-B, §§ 913-e to 913-r), applying to older adolescents the procedures followed in juvenile courts, including the option — rarely exercised — to conduct all proceedings in private. (See, Levine, The Youthful Offender Under the New York Criminal Procedure Law, 36 Alb L Rev 241 [1972].) "The substantive alterations and tinkering which have affected the youthful offender process suggest a lack of confident knowledge in dealing with the crime problems of youths.” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 720.10, at 217.)
CPL article 720 ("Youthful Offender Procedure”), in effect *268 since 1971, gives recognition to the unique status of youths tried in criminal courts (see, People v Putland, 102 Misc 2d 517, 525 [removal to Family Court]). Most significantly, youthful offender status is under the statute determined only after defendant has been tried and convicted criminally (see, People v Cecil Z., 57 NY2d 899); the statute provides special measures for persons found to be youthful offenders. Those measures "emanate from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals.” (People v Drayton, 39 NY2d 580, 584.)
Under the statute, youths charged with crimes alleged to have been committed when they were 16 to 19 years old and persons charged as juvenile offenders (CPL 1.20 [42]) are, with some exceptions, eligible for youthful offender status (CPL 720.10 [1], [2] and [3]).[1] Eligible youths are tried as any criminal defendant would be. Upon conviction, the court must order a presentence investigation and then decide whether defendant should be treated as a youthful offender. If a "youthful offender” finding is made, the court must direct that the conviction be deemed vacated and replaced by the youthful offender finding, and it must sentence the defendant pursuant to Penal Law § 60.02, which permits a maximum indeterminate term of imprisonment of four years (CPL 720.20 [1]; 720.10 [4]). The youthful offender finding and sentence imposed together constitute a "youthful offender adjudication.” (CPL 720.10 [6]; 720.20; see, People v Gina M. M., 40 NY2d 595.)[2] If a youthful offender finding is not made, the action is continued to judgment following procedures ordinarily applicable to criminal prosecutions (CPL 720.20 [4]). Upon a youthful offender adjudication, all official records and papers must be sealed (CPL 720.35).
In that the objectives of special measures for youthful offenders include rehabilitative treatment and protection from *269 a lifetime stigma, obviously the subject of privacy of the proceedings is a central concern (see, e.g., Jonas, Press Access to the Juvenile Courtroom; Juvenile Anonymity and the First Amendment, 17 Colum J L & Soc Probs 287 [1982]). On this subject, the balance struck by the Legislature is set forth in CPL 720.15, the only provision of article 720 dealing with privacy, or closure, of proceedings. Until 1978, the statute contained a blanket provision for privacy from the inception of the proceedings, irrespective of the charges, in the discretion of the trial court:
"1. When an accusatory instrument against an apparently eligible youth is filed with a court, the court, with the defendant’s consent, must order that it be filed as a sealed instrument, though only with respect to the public.
"2. When a youth is initially arraigned upon an accusatory instrument, such arraignment and all proceedings in the action thereafter may, in the discretion of the court and with the defendant’s consent, be conducted in private.”
In 1978 — as part of a new juvenile offender law responding to the increased problem of serious juvenile crime, and departing somewhat from the prior therapeutic orientation of juvenile justice practice[3] 4 — the Legislature specifically withdrew these protections from youths charged with murder or armed felony by adding a new subdivision to 720.15 (L 1978, ch 481, § 60). The following year it enlarged that new subdivision— CPL 720.15 (3) — to include all felonies. As the statute now reads: "3. The provisions of subdivisions one and two of this section requiring or authorizing the accusatory instrument filed against a youth to be sealed, and the arraignment and all proceedings in the action to be conducted in private shall not apply in connection with a pending charge of committing any felony offense as defined in the penal law.” (L 1979, ch 411, § 15.)[4]
*270 No one disputes that CPL 720.15 (3) has removed the blanket of privacy from the adjudicatory portion of felony cases involving eligible youths. Indeed, the trial of Dawn Maria C., involving testimony of sexual abuse and psychiatric evaluations, received wide publicity. The question before us is whether CPL 720.15 (3) leaves discretion in the Trial Judge after a conviction, and upon a youthful offender finding, to drop that blanket of privacy over the dispositional phase of the case. Respondents urge three bases for recognizing this discretion: first, to deny it defeats the objectives of article 720; second, subdivision (3) applies only to a "pending” felony charge, and a "pending” charge evaporates upon a youthful offender finding; and third, unless proceedings may be closed, the provisions for sealing official papers (CPL 720.35 [2]) are senseless. None of these arguments is persuasive.
The Legislature has recognized and expressed solicitude for the special situation of youthful offenders, but it has done so in a statute that courts are bound to interpret and apply. Respondents urge that privacy is integral to the juvenile justice system in general, and that press access to youthful offender dispositional proceedings in particular — which may involve extremely personal family matters — undermines the statutory objectives. They point to various authorities concerning the value of secrecy in sentencing juveniles (see, e.g., IJA/ ABA, Standards Relating to Dispositional Procedures [1980], and IJA/ABA, Standards Relating to Adjudication [1980]; see generally, Jonas, Press Access to the Juvenile Courtroom; Juvenile Anonymity and the First Amendment, 17 Colum J L & Soc Probs 287, 294, 296-297, 332 [1982]; McLaughlin & Whisenand, Jury Trial, Public Trial and Free Press in Juvenile Proceedings: An Analysis and Comparison of the IJA/ABA, Task Force and NAC Standards, 46 Brooklyn L Rev 1 [1979]; Note, Rights and Rehabilitation in the Juvenile Courts, 67 Colum L Rev 281, 285-286 [1967]). Whether or not privacy is desirable and should be permitted or even mandated in all dispositional proceedings involving youths, the fact remains that the Legislature balanced the competing considerations and competing private and public interests when it formulated article 720. It is the statute that controls.
Felony charges fall outside the privacy provisions of CPL 720.15 (2). That conclusion is compelled by a straightforward reading of the statute (see, People v Floyd J., 61 NY2d 895, 896). Under CPL 720.15, "[a]ll felony offenders potentially treatable as youthful offenders, and this of course includes *271 juvenile offenders, are subject to the full glare and publicity of adult felony offenders.” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 720.15, at 226.) The history of CPL 720.15 also supports this conclusion. As part of a new law dealing more severely with serious juvenile crime, the Legislature in two successive years specifically withdrew the blanket of privacy from felonies involving youthful offenders. In approving the 1979 amendment to CPL 720.15 (3), the Governor noted that the bill would "eliminate the existing secrecy provisions in felony cases where the defendant is a potential recipient of youthful offender treatment”. (1979 McKinney’s Session Laws of NY, at 1800.)
We cannot accept respondents’ argument that subdivision (3) becomes inapplicable upon a youthful offender finding because the finding supplants what has gone before it and there is thus no longer a "pending” felony charge. Such a construction is strained, as against the straightforward reading of the statute and its history. CPL 720.15 plainly speaks to the time of initiation of the action — i.e., when the accusatory instrument is filed (CPL 720.15 [1]), or the youth is arraigned (CPL 720.15 [2]). It is at that time that the nature of the "pending” charges — whether misdemeanor or felony charges— becomes material. Moreover, to follow out respondents’ argument would mean that if a youthful offender finding were overturned on appeal (see, CPL 720.30), there would no longer be any "pending” charges for renewed prosecution. Finally, "[w]here the Legislature has chosen to temper or abrogate the presumption of openness, it has done so in specific language * * * and these exceptions have been strictly construed by the courts.” (Matter of Herald Co. v Weisenberg, 59 NY2d 378, 381-382; see also, People v Putland, 102 Misc 2d 517, 527, supra.) The Legislature has not specifically expressed an intention to limit the presumption of openness at any point in felony cases involving youthful offenders; the converse is true.
Nor do the mandatory provisions for confidentiality — i.e., sealing all official records upon a youthful offender adjudication (CPL 720.35 [2]) — swallow up the discretionary provisions for privacy — i.e., courtroom closure (CPL 720.15 [2]). These are distinctly different statutory sections with different purposes (see by analogy, Matter of Herald Co. v Weisenberg, 59 NY2d 378, supra). If closure were required every time sealing were required — on the theory that it is senseless to permit public access and yet require sealing — then every youthful offender *272 would necessarily be tried and sentenced privately. That is simply not what the statute provides.
The separate purposes served by the privacy (or closure) provisions and the confidentiality (or sealing) provisions of article 720 are clear. The privacy provisions permit but do not require a court to shield misdemeanants from public proceedings and public exposure in the press. The confidentiality provisions, applicable to all youthful offenders, effectuate the distinction between a youthful offender adjudication and a criminal conviction. CPL 720.35 (1) provides that a youthful offender adjudication is not a judgment of conviction and does not operate to disqualify the youth from holding public office or employment or receiving licenses granted by the public authority. The requirement found in CPL 720.35 (2) that a youthful offender’s records generally remain confidential assures that the provisions of CPL 720.35 (1) are carried out: a youthful offender has no stigma or disability of a criminal conviction or criminal record.
We therefore conclude, like the Appellate Division, that in both felony cases before us the proceedings were presumptively open to the public, and that the trial courts acted improperly in closing them simply because they concerned youthful offenders.
The Appellate Division, noting that the right of access is of constitutional dimension (see, e.g., Matter of Associated Press v Bell, 70 NY2d 32; Press-Enterprise Co. v Superior Ct., 478 US 1), held that there could be closure only upon a motion heard on the record in open court, with affected members of the media given an opportunity to participate; that defendant must demonstrate "a strong likelihood” that fair trial rights would be prejudiced if the proceedings remained open; and that the court’s reasons for closure must be set forth on the record (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 442, 448, supra). Respondents urge that these same standards and procedures should not apply in proceedings involving juveniles, but that is an issue that must await another day. Here, no fair trial or other rights were asserted against which petitioner’s right of access might be balanced; only youthful offender law secrecy is claimed. Because the presumption of openness was not overcome, the cases before us are resolved under the statutes without reaching constitutional issues. It bears emphasis, however, that the result reached today does not preclude the right to seek closure in appropriate circumstances.
*273 Finally, the relief ordered — a direction to respondents to reveal the sentences they imposed upon Dawn Maria C. and Arianne D. — was proper. There is no question of directing a discretionary act, and no occasion to remand the cases for an exercise of discretion. Respondents were without discretion to conduct the sentencing proceedings in private under CPL 720.15 (2) because both cases involved felony charges subject to CPL 720.15 (3). There was no contention that any exception to Judiciary Law § 4 was applicable, and no application for closure implicating the court’s discretion. Though named as respondents in these article 78 proceedings, neither youth appeared, and neither has asserted any other basis for closure. In his answer to the article 78 petition, respondent Turner has stated that his decision to close the dispositional proceedings was in fact motivated by "exquisitely delicate matters” and by promises of confidentiality that had been made to third persons in exchange for information. In disclosing only the sentences imposed — thereby granting petitioner its full requested relief — no portion of the transcript or other official record is released, and the private matters mentioned by respondent Turner in his answer will not by this direction be revealed.
Accordingly, in each case the judgment of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
In each case: Judgment affirmed, without costs.

. Dawn Maria C. was an "eligible youth” because she was 17 at the time of the incident. Arianne D. was an "eligible youth” because, as a 14-year-old criminally responsible for arson in the second degree, she was charged as a juvenile offender.

. It is important to distinguish the "youthful offender adjudication”— consisting of a youthful offender finding and sentence — from an adjudication of guilt, or conviction, concluding the adjudicatory (as opposed to dispositional) phase of the proceeding. To be distinguished as well are the separate statutory concepts of privacy (or closure) and confidentiality (or sealing).

. See, Warner, Analysis of Changes in Juvenile Offender Law, NYU, Aug. 6, 1979, at 1, col 1. See generally, McQuillan, Felony Murder and the Juvenile Offender, NYU, Aug. 25, 1978, at 1, col 2; Warner, The New Law on Juvenile Offenders, NYU, Sept. 5 and 6, 1978, at 1, col 2; and Peyser, The New Juvenile Offender Law in New York, NYU, Sept. 27, 1978, at 1, col 1.

. In 1985, again responding to the concern over rising juvenile crime, the Legislature amended CPL 720.15 (3) to add that "[t]he provisions of subdivision one requiring the accusatory instrument filed against a youth to be sealed shall not apply where such youth has previously been adjudicated a youthful offender or convicted of a crime.” (See, Mem of Support, Governor’s Bill Jacket, L 1985, ch 774.)